RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 2 4 2011

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARISELA GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| | ) | |
| v. | ) | 1:11-CV-2074 |
| | ) | |
| | ) | |
| A-TEK, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant, | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Marisela Garcia, and hereby files this Complaint for Damages against A-TEK Inc (Defendant), showing this Honorable Court as follows:

## INTRODUCTION

This action is for wrongful termination. Plaintiff also asserts claims for retaliation against further employment for filing this complaint. The facts are that Ms. Garcia was originally hired in 2007 by the Public Health Foundation Enterprises (PHFE), the government contractor at the time, as a microbiologist at the Michigan Department of Community Health in Lansing, MI. As a result of her excellent performance, in less than one year Ms. Garcia was promoted to the position of Lead Biological Scientist for the BW program in Lansing, MI. Subsequently, the contract for the BioWatch (BW) program was awarded by the United States Department of Homeland Security (DHS) to A-TEK Inc., and Ms. Garcia was hired by it on January 1, 2008 to perform the same duties that were assigned under PHFE.

In July of 2009, Ms. Garcia was offered and accepted an A-TEK position of Biological Scientist at the New York Public Health Laboratory (NYCPHL).  Although it was a step down in title, Ms. Garcia agreed to the transfer because it offered an increase in salary.  The Lead Biological Scientist for the NYCPHL at this time was Dr. Scott Hughes.

In August of 2009, Ms. Garcia identified ten items of protocol drift in the NYCPHL that threatened public safety and merited immediate re-mediation.  Dr. Hughes and the NYCPHL were initially resistant to Ms. Garcia's findings, but as it was ultimately determined that all items she uncovered had merit, the agency was obligated to make necessary corrections.  As a result of an investigation conducted by A-TEK Inc, Dr. Hughes was put on a three month Performance Improvement Plan.  Dr. Christopher Aston, The NYCPHL Manager for the Molecular Biology Laboratory requested that Ms. Garcia also be written up for alerting A-TEK and DHS of the protocol drift.  Dr. Aston was unsuccessful in his endeavor.  Furthermore, Ms. Garcia was commended by A-TEK Inc. for a job well done.  A-TEK, through Michelle Moor, the Director of Programs at the time, insisted that Ms. Garcia be her "eyes and ears" for any further protocol drift or anything else that was inconsistent with the BW program's Statement of Work for A-TEK staff.  Although, Ms. Garcia initially expressed reluctance because of the backlash she encountered from the Dr. Aston and the NYCPHL due to her previous actions regarding the protocol drift, Mrs. Moor told her in no uncertain words "it is your job and responsibility".  Mrs. Moor was her supervisor; A-TEK was her employer and refusing direct orders from her supervisor or A-TEK would be considered insubordination.

Dr. Hughes ultimately resigned in April of 2010. A-TEK had acquired a new program manager to supervise the A-TEK staff for the BW program. Ms. Susan Stewart, the new program manager encouraged Ms. Garcia to apply for the Lead Biological Scientist position vacated by Dr. Hughes. However, the NYCPHL insisted that Mrs. Zeba Mohiuddin be offered the position of Lead Biological Scientist for the NYCPHL's BW program. Although A-TEK believed Mrs. Mohiuddin to be less qualified than Ms. Garcia, in an effort to satisfy the NYCPHL, Mrs. Mohiuddin was selected for the position.

In early June of 2010, Ms. Garcia once again uncovered instances of protocol drift that threatened public health and safety. Some of these instances were reoccurrences of initial items of protocol drift uncovered in August of 2009. Ms. Garcia immediately informed Mrs. Mohiuddin, the Lead Biological Scientist and as informed by her supervisors at A-TEK, Michelle Moor and Susan Stewart. Ms. Garcia further informed Ms. Stewart that she was concerned about informing A-TEK because of the prior retaliation she suffered and therefore, sent the observation of additional protocol drift to A-TEK by blind carbon copy. There was subsequently a staff meeting in which Ms. Stewart attended via teleconference. Dr. Chris Aston was also present at the meeting in-person however Mrs. Mohiuddin never raised the issues of additional protocol drift. Ms. Garcia remained silent throughout the meeting for fear of retaliation should she be identified as the person responsible for informing A-TEK. An investigation by the NYCPHL was conducted that identified Ms. Garcia as the person once again responsible for informing A-TEK Inc.

One week later, June 25, 2010, Mrs. Mohiuddin requested that Ms. Garcia report to work early, which she did. When she arrived she was not allowed into her office, but rather was publicly escorted by the NYCPHL police to meet with Mrs. Mohiuddin and Mrs. Moore (via teleconference). Mrs. Moor informed Ms. Garcia that she was being terminated stating "unfortunately the client (NYCPHL) does not want you back in the building and because you cannot report to work, A-TEK has to terminate your employment". There was no legitimate basis to terminate Ms. Garcia, who had a ten year record of excellent work performance in the field and excellent performance reviews while employed with A-TEK Inc. She was never given a warning of any kind or placed on a performance improvement plan for conduct inconsistent with the A-TEK/DHS statement of work for A-TEK staff for the BW program. Indeed, just a few months earlier, Ms. Garcia was A-TEK's choice for the Lead Biological Scientist position at the New York Public Health Laboratory. The only explanation is that the termination was in retaliation for Ms. Garcia doing her job as ordered by her A-TEK supervisors and reporting protocol drift which could endanger the public health and safety of the citizens of New York City consequently embarrassing the NYCPHL.

Ms. Garcia was contacted several times by Ms. Susan Stewart immediately after her termination with offers for other BW positions in El Paso, TX; Denver, CO; and Miami, FL. However, it is against A-TEK policy to reimburse staff for relocation expenses and Ms. Garcia is a single mother who simply lacked the funds at the time to conduct yet another move out-of-state. However, in November of 2010, Ms. Garcia who was

unemployed could simply no longer afford to reside in the New York City area, relocated to Atlanta, GA to live with a family member.

In October of 2010, A-TEK was informed of Ms. Garcia's intent to seek damages for unfair termination. In February of 2011, the Lead Biological Scientist of the Atlanta, GA BW laboratory was terminated. Ms. Garcia has the requisite experience for the position of Lead Biological Scientist, and she immediately applied for this position. However to date she has yet to be called for an interview and the position remains vacant. A-TEK has an obligation per the terms of its contract with DHS to attempt to fill this position within 30 days of its opening. The fact that they have not sought to contact Ms. Garcia for consideration for this position is further retaliation against Ms. Garcia, and she is seeking damages for retaliation by way of this complaint.

Sincerely,

Marisela Garcia,   6/24/2011

Plaintiff (Pro Se)